Turner *et al.*, executors, *vs.* Berry *et al.*

[Blandford, J., not presiding, on account of providential cause.]

1. An equitable plea to an action of ejectment alleged that the plaintiff had purchased the lands at sheriff's sale, and contracted in writing to make a deed to part of it to the defendants upon the making of certain payments; that the amount had been more than paid by sale of part of the land; and that the plaintiff should pay them the balance, and make them a title to the remainder of the land. The contract under which defendants claimed provided that, upon the payment of a certain promissory note in four installments, the last "on the first of January, 1877, the balance due on said note, with any other indebtedness to me or to T. C. & D. L. Turner," in consideration of ten dollars paid by the wife of the defendant in the execution under which the plaintiff in ejectment bought, he would make to her, for the use and benefit of herself and children, titles to the land, or so much of it as should be unsold at that time and not necessary to be sold to pay "the above considera tion." On this contract, bearing the same date with it, and signed by the obligor therein, was an entry stating that he held certain executions against the husband and father of the beneficiaries under the contract, which he would not enforce against him, but would hold for the protection of the wife. Subsequently there was another entry, stating the sale of four hundred acres for $2,400.00, and that, after paying a debt to one Deveraux and other indebtedness to himself, as appeared from his book accounts, a balance of $1,788.53 was left as a credit on the note:

*Held*, that, under an equitable construction of the words in the contract, "all other indebtedness to me or to T. C. & D. L. Turner," they included the indebtedness of the wife and children made after the death of the husband and father, and whatever was incurred by them to the maker of the obligation or to T. C. & D. L. Turner for things necessary for the family, might well be included therein.

(*a.*) At least parol evidence was admissible to explain any ambiguity on this subject; and it was error to reject testimony to show debts for necessaries for the family, incurred after the death of the husband, to the parties named in the contract.

2. If the Devereaux debt was such a one as could subject the land, and as could not be defeated by the executions in the hands of obligor, it ought to have been paid; but not being in the agreement, it could not be brought within it by the consent of the wife; nor could a new contract be made by her, binding upon her *cestuis que trust*, equally interested with herself, to pay it.

(*a.*) The entry in respect to the Devereaux debt was admissible as an

v 74-31

admission of the wife, being on the paper in her possession and on which she relies; but it would be useless, unless that debt were shown to be superior in dignity to the sheriff's deed and the judgment under which it was made.

3. The entry made on the same day with the obligation, and signed by the obligor at the same time, must have been made before delivery of the obligation on which it was made, and was admissible.
April 2, 1885.

Contracts. Bond for Titles. Evidence. Debtor and Creditor. Judgments. Before Judge POTTLE. Hancock Superior Court. October Term, 1884.

Reported in the decision.

C. W. DuBOSE; JAMES A. HARLEY, for plaintiffs in error.

J. T. JORDAN, by HARRISON & PEEPLES, for defendants.

JACKSON, Chief Justice.

An action of ejectment in the statutory form was brought by Turner against Mrs. Berry and others for the recovery of a parcel of land. Turner died and his executors were made parties plaintiffs in his stead. An equitable plea was filed by the defendants, alleging substantially that Turner bought the land at sheriff's sale as the land of Berry. the deceased husband and father of defendants, and contracted in writing to make a deed to part of the same to defendants when the terms of that contract were complied with and the notes given by Berry were paid; that this amount had been overpaid by sale of part of the land, and that plaintiffs owed them the balance, and equity would compel plaintiffs to pay them such balance due and make title to the remaining parcel sued for. The jury found for the defendants a balance due, and that plaintiffs should pay it and make title, and the court adjudged accordingly. On the denial of a motion for a new trial, plaintiffs excepted, and assign error in this court on the grounds in the motion specified.

1. The main point is that certain parol testimony should have been admitted in evidence, which had been rejected on the hearing.

The legal title to the land was in the plaintiffs. The sheriff's deed at the sale of Berry's property put it in their testator, and on it they could recover without more shown by defendants. In order that defendants retain the land, they had to show title, or a right in equity to a title, from the plaintiffs. On a written contract between Turner and Berry, both dead, their case turns, because thereby Turner agreed to make them titles on certain terms, and what those terms were, and whether complied with or not, were the issues before the superior court, and are the issues here. The court below construed the contract, holding that there is no ambiguity in it to let in any parol testimony; and on this point the case mainly turns.

Those terms are on the payment of a promissory note in four installments, the last

"On the first of January, 1877, the balance due on said note, with any other indebtedness to me or to T. C. and D. L. Turner. When this sum is fully paid and discharged without costs to me, and in consideration of ten dollars paid to me by Mrs. Sarah Ann Berry, wife of said F. W. Berry, I bind myself, my heirs, etc., to make, or cause to be made to her for the use and benefit of herself and children, titles to said land, or as much of said land as shall be unsold at that time, and not necessary to be sold to pay the above consideration."

On this contract, bearing the same date, June 3, 1873, is an entry made by Turner, who alone signed the paper or obligation above mentioned, stating that he held certain executions against Berry, which he would not enforce against Berry, but would hold for the protection of Mrs. Berry; and on October 1, 1874, another entry, stating the sale of 400 acres for $2,400 to Harper, and after paying a debt to Devereaux and another debt to himself, as will appear from his book of accounts, leaves as a credit of seventeen hundred and eighty-eight dollars and fifty-three cents on the note.

These entries were ruled out, and also all parol evidence

going to show that the Devereaux debt was due at the date of the contract and paid by consent of Mrs. Berry, her husband being dead, and other parol evidence, as well as books of original entry to show indebtedness of Mrs. Berry for necessaries sold to her by T. C. & D. L. Turner, and that deceased, Turner, in his lifetime paid them the account out of money he got from the sale of part of the land, with her consent; and to the exclusion of this evidence error is assigned, as well as to the judgment of the court, that the contract was not ambiguous, but embraced only debts due at the date of the contract to Berry, deceased, and no debt to Devereaux.

The defendants put themselves in equity and prayed for equitable relief, and based it on the contract. An equitable construction, it strikes us, should therefore be given to it, and not a rigid legal, technical reading of it. What do the words, " all other indebtedness to me or to T. C. & D. L. Turner," mean? The court below held that they meant only indebtedness at the date of the contract. But when we look at the contract, it appears that Berry, who died shortly thereafter, really had no interest, or at least reserved none, in the obligation; that he was in failing circumstances; that his land had been sold by the sheriff and bought by Turner, who held other executions against him, and bound himself to use these to protect Mrs. Berry; that her ten dollars paid was consideration for the obligation of Turner; that the deed was to be made to her for the use of herself and children; and to be made when the last installment of the note was paid. She and her children are the beneficiaries of the contract. In her the legal title was to be put when the indebtedness was extinguished.

So that we think that an equitable construction of the paper means the indebtedness of herself and children after Berry's death, and whatever was incurred by them to the maker of the obligation, or to T. C. &. D. L. Turner prior to the final settlement, for things necessary for the family, may well be included in that term without more. But

parol evidence was clearly admissible to show it, if at all ambiguous; and that the words are ambiguous appear in the very fact that this court puts a construction upon them different from that of the presiding judge. We think, therefore, that the court erred in rejecting the evidence showing the indebtedness of Mrs. Berry for necessaries to Turner, made after the death of her husband, as well as debts of the same sort incurred by her to T. C. & D. L. Turner, and paid by Turner out of the land sold. To hold otherwise, it would seem that we would be forced to hold that the family should starve pending the payment of the debt owing for the land. The legal title was to be put in Mrs. Berry, and her husband being dead, and no fraudulent conduct being charged upon Turner, her consent without more would certainly justify in a court of equity (and this is an equitable plea) expenditures reasonably necessary for her and children. To get equity, complainants must always do equity.

2. In respect to payment of the Devereaux debt there is much doubt. If it had been such a lien upon this land as a mortgage, for instance, and could not have been prevented from selling it, it is clear that it ought to have been paid. Inasmuch as Turner obligated himself to protect Mrs. Berry with his executions, he was bound to do so if he could, and her consent would hardly justify the payment of it. But if his executions could not prevent its successful prosecution by suit to recover out of the land, or he could not do so by the legal title from the sheriff being in him, then, inasmuch as no mention is made of that debt in the contract, we do not well see how it could be brought within it by Mrs. Berry's consent, or a new contract be made by her binding upon her *cestuis que trust,* equally interested with herself to pay it, when Berry, by his contract with Turner, had guarded against it. The entry in respect to it would be admissible as an admission of Mrs. Berry for what it is worth, being upon the paper in her possession, and on which she relies, but it would be

useless unless the Devereaux debt were shown to be superior in dignity to the sheriff's deed and the judgment under which that deed was made.

3. The entry made on the same day with the obligation, and signed by the obligor at the same time, must have been made before delivery of the obligation inside, and was admissible.

The judgment refusing the new trial is reversed, because the court excluded evidence of indebtedness to Turner, and the firm of T. C. & D. L. Turner, after the death of Berry, and because it construed that the instrument meant that, it being the opinion of this court that by a fair and equitable construction, it means all indebtedness at the time the settlement should be made, and the deed executed under it. See 46 *Ga.*, 232; 48 *Id.*, 504; 49 *Id.*, 102; 65 *Id.*, 555.

Judgment reversed.